UNITED STATES DISTRICT COURT
FILED
AUG 2 0 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEITH N.,

Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

25-CV-06138-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.

Plaintiff Keith N.[1] ("Plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 5) is denied, and defendant's motion (Dkt. No. 9) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

AUG 2 1 2025

## BACKGROUND[2]

Plaintiff filed an application for DIB on May 3, 2022, with an alleged onset date of April 19, 2022. (Administrative Transcript ["Tr."] 10, 276-82). His claim was denied initially on October 13, 2022, and upon reconsideration on August 9, 2023. (Tr. 148, 158). Plaintiff filed a written request for a hearing on August 11, 2023. (Tr. 183-216). On September 25, 2024, Administrative Law Judge ("ALJ") Joshua Pinkus held a telephone hearing, at which Plaintiff participated, with counsel. (Tr. 72-130). A vocational expert also testified. The ALJ issued an unfavorable decision on December 10, 2024. (Tr. 7-28). The Appeals Council denied review, (Tr. 1-6), and this action followed.

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. Id.

II. Standards for Determining "Disability" Under the Act

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Id. §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." Id. §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." Id. §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." Id. §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. Id. §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the

Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. Id. §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. Id. §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. Id. §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." Id. §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." Id. §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. Id. §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." Id. §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. Id. §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act. Id. §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the knees; degenerative joint disease the hips; degenerative disc disease of the lumbar spine; obesity; psoriatic arthritis; major depressive disorder; anxiety disorder; posttraumatic stress disorder (PTSD); and attention deficit hyperactivity disorder (ADHD). (Tr. 13-15). At step three, the ALJ concluded that none of Plaintiff's impairments met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14-15.

The ALJ further concluded that Plaintiff had the RFC to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a),

> except the claimant can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance as defined in the SCO; occasionally stoop; never kneel; never crouch; and never crawl. He can tolerate occasional exposure to extreme cold and extreme heat; as well as occasional exposure to humidity. He must avoid all exposure to ordinary hazards in the workplace such as unprotected heights and moving mechanical parts. He can tolerate occasional exposure to respiratory irritants, such as fumes, odors, dusts, gases, and poor ventilation. He is able to understand and remember simple instructions. He is able to use judgment to make simple work-related decisions, and carry out simple instructions. He can have occasional interaction with

> supervisors. He can have no interaction with the general public or with co-workers, which I define as nothing more than incidental contact. He is limited to object-oriented work, whereas he is limited to working with things rather than people. He can deal with occasional changes in a routine work setting. He cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. He is limited to working in no greater than a moderate noise level environment as defined in the SCO [Selected Characteristics of Occupations].

(Tr. 15-22).

At step four, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 22-23). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 23-24). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 24).

*Plaintiff's Challenges*

Plaintiff argues that: (1) the ALJ did not evaluate properly the physical opinion evidence; and (2) the ALJ improperly relied on his own lay judgment for the mental limitations he included in his RFC finding. The Court finds these arguments without merit.

Plaintiff's challenge to the ALJ's evaluation of the medical opinion of consultative examiner Dr. John Schwab, D.O., is unavailing. As an initial matter, Dr. Schwab opined that Plaintiff has only a "very mild" restriction to bending, lifting, and carrying heavy objects; "mild" restriction to rotating and lateral flexing his neck to the right; and "mild" restriction to "prolonged" walking and climbing stairs and ladders. (Tr. 578). Where moderate limitations are found to be consistent with sedentary work, mild limitations, like determined by Dr. Schwab, are consistent with a full range of sedentary work. *See, e.g.*, *Tiffany H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00924(JJM), 2021 WL 9595920, at *3 (W.D.N.Y. Aug. 27, 2021) ("Courts have found moderate limitations in standing, walking,

lifting and reaching to be consistent with sedentary work."). Furthermore, the ALJ *did* analyze the supportability consistency of Dr. Schwab's opinion. The ALJ pointed out that Dr. Schwab's mild limitations were not fully supported by his findings. (Tr. 22); *see* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). As the ALJ noted earlier in the RFC discussion, Dr. Schwab's examination revealed full range of motion of all joints in Plaintiff's upper and lower extremities. (Tr. 18; *see* Tr. 577). In addition, the ALJ addressed the consistency of Dr. Schwab's opinion by contrasting it with the opinion of consultative examiner Dr. Nikita Dave, M.D., which the ALJ explained was consistent with the medical imaging and the examination findings of diminished range of motion in the lumbar spine, hips, and knees. (Tr. 22); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

The ALJ found that physical therapist Sarah Milliken's report was "not fully persuasive" because some areas of limitation appeared to be based on Plaintiff's subjective reporting as no objective testing was described as support for the limitation; the nature of the testing used in other areas was unclear; and the standing limitation was inconsistent with other observations in the record showing that Plaintiff had normal gait and station. (Tr. 18-19, 22). Contrary to Plaintiff's claim, the ALJ's analysis sufficiently addresses the supportability and consistency of the opinion. By pointing to the lack of

objective medical evidence and supporting explanations presented by Ms. Milliken, the ALJ was addressing supportability. (Tr. 22); *see* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). By identifying evidence from other medical sources and nonmedical sources in the claim that were inconsistent with Ms. Milliken's report, the ALJ was also addressing the consistency factor. (Tr. 22); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). No more was required.

In addition to the medical opinion evidence, the ALJ properly considered evidence that Plaintiff received treatment primarily at the Veterans Administration for his physical impairments, including pain in his knees, hips, and back. (Tr. 16-17). The ALJ acknowledged that Plaintiff reported only being able to stand for thirty seconds at a time and that walking is difficult due to his pain, but the ALJ also pointed out that treatment records documented normal gait and station. (Tr. 16-18, 22). Still, the ALJ limited Plaintiff to sedentary work based on evidence of pain from standing and walking as reflected in treatment records and Plaintiff's reports. (Tr. 22). In addition, the ALJ noted that medical imaging documented osteoarthritis which supported exertional and postural limitations. (Tr. 21). The objective findings and other medical evidence discussed by the ALJ support the RFC assessment. (Tr. 16-22).

The ALJ also properly considered evidence related to Plaintiff's mental impairments, and the ALJ expressly noted that he was "cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses" and made clear that Plaintiff's psychological symptoms and their effect had been considered together, regardless of the diagnostic label. (Tr. 19). For instance, the ALJ considered evidence related to Plaintiff's anxiety, depression, PTSD, and ADHD, throughout the decision. (Tr. 13-22). The ALJ pointed to normal mental status examination findings and notes reflecting that Plaintiff was doing well overall, but also took stock of treatment notes showing some increased symptoms at times due to feelings of being overwhelmed; changes in plans due to exacerbations of symptoms; and Plaintiff's need to care for his wife's mental health. (Tr. 22). The ALJ noted that medication and therapy had been helpful, but acknowledged that Plaintiff still had some triggers, including crowds and stress. (Tr. 21). The ALJ accommodated these triggers in assessing the RFC. (Tr. 15-16, 21).

The ALJ afforded Plaintiff greater mental limitations than any opinion suggested. Thus, if anything, the ALJ's mental RFC finding was in Plaintiff's favor. Moreover, the ALJ sufficiently explained how the evidence supported the mental limitations. (Tr. 16-22). For example, the ALJ noted that Plaintiff had periods of increased stressors, but that his mental status examinations were largely benign and that he continued with mental health treatment. (Tr. 20-21). Contrary to Plaintiff's assertion, the ALJ did not improperly interpret any mental health evidence beyond his capabilities. He appropriately took stock of the fact that Plaintiff had normal findings on examination, including normal mood, attention and concentration, adequate speech skills, and appropriate appearance and eye contact.

(Tr. 21). Thus, the ALJ did not rely on his own lay opinion in formulating Plaintiff's RFC by rejecting opinion evidence in Plaintiff's favor. *See*, *e.g.*, *Dawn P. v. Comm'r of Soc. Sec.*, No. 22-CV-00084-MJR, 2025 WL 1466065, at *3 (W.D.N.Y. May 22, 2025) (citing *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020); *Lesanti v. Comm'r Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020).

The ALJ offered specific, record-supported reasons for finding Plaintiff's subjective statements of disability not entirely consistent with the record. Therefore, this finding warrants deference. *See Selian*, 708 F.3d at 420; *see also Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("[Courts] have no reason to second guess the [subjective-statement] finding . . . where the ALJ identified specific record-based reasons for his ruling.").

The above evidence meets the threshold for substantial evidence, which the Supreme Court has explained is "not high" and means only such relevant evidence as a reasonable mind might accept as adequate. *Biestek,* 587 U.S. at 102-03; *see also Brault*, 683 F.3d at 448 (explaining that substantial evidence is "very deferential" standard of review). Although Plaintiff argues that the evidence could conceivably have supported a different conclusion, this does not warrant remand under the deferential standard of review. *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Rather, Plaintiff must establish that a different conclusion was the *only* reasonable interpretation of this evidence. *Brault*, 683 F.3d at 448 (explaining that the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*"); *Schillo*, 31 F. 4th at 78 ("Under our very deferential standard of review, we cannot say

that no reasonable factfinder could have reached the same conclusion . . . .") (internal citations omitted).

**CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is denied and defendant's motion for judgment on the pleadings (Dkt. No.9) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: August 20, 2026
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge